UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

MARLENE STOLLINGS,

     Plaintiff,

v.                                                                   No. 5:20-CV-250-H

TEXAS TECH UNIVERSITY, et al.,

     Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTION TO DISMISS IN PART**

This case followed Texas Tech's termination of its head women's basketball coach, Marlene Stollings.  Stollings sued Texas Tech and its Athletic Director, Kirby Hocutt, alleging breach of contract, fraud, fraudulent inducement, specific performance, violation of constitutional rights under 42 U.S.C. § 1983, and sex discrimination and retaliation under both Title VII and Title IX.  Stollings also sued Hocutt in his individual capacity for defamation, defamation per se, and tortious interference with a contract.  Defendants filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] Defendants argue that these claims should be dismissed because Stollings either fails to adequately plead them or the claims are barred by sovereign or qualified immunity.

The Court grants the motion to dismiss in part and denies it in part.  Through the deferential lens applicable to motions to dismiss, the Court finds that Stollings has stated a claim against Texas Tech under Title VII for discrimination and Title IX for retaliation and that these claims are not barred.  But the Court finds that the state-law claims are barred by

---

[1] Defendants' motion is titled as a partial motion to dismiss, however they move to dismiss all claims.

sovereign immunity and that the defendants are not the proper parties to a Section 1983

claim.  The Court also dismisses the tort claims against Hocutt because the Texas Tort

Claims Act precludes them.  Accordingly, the Court dismisses these claims.

1.      **Factual Background[2]**

   A.      **Stollings's Employment Contract**

Texas Tech University is a public higher-education institution located in Lubbock,

Texas and within the Texas Tech University System.  Plaintiff Marlene Stollings was the

head coach of Texas Tech's women's basketball team from April 2018 until her termination

in August 2020.  Dkt. No. 15 ¶¶ 2, 31.  Defendant Kirby Hocutt is the Athletic Director for

Texas Tech and responsible for supervising all collegiate sports at the university.  *Id.* ¶¶ 12,

58.  In this role, Hocutt is also responsible for recruiting, vetting, and hiring head coaches

and staff for Texas Tech's athletic program.  *Id.* ¶ 59.

In early 2018, Texas Tech approached Stollings about taking over its women's

basketball program.  *Id.* ¶ 75.  In April 2018, Stollings entered into an employment

agreement with Texas Tech that established her as the head coach of the women's

basketball team until March 31, 2024.  *Id.* ¶¶ 3, 77.  The agreement guaranteed Stollings an

annual salary of $300,000 and set out various bonuses for specified events—such as winning

a national-championship game.  *Id.* ¶¶ 83–84.

The employment agreement permitted Texas Tech to terminate Stollings "for cause

only if, 'based on substantial evidence,' Coach Stollings failed to perform her duties or acted

in harmful or inappropriate ways, such as a 'failure or refusal to perform assigned duties' or

---

[2] These allegations are taken from Stollings's complaint, which the Court must accept as true when resolving a motion to dismiss.  *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).

'serious violation of local, state, or federal laws.'" *Id.* ¶ 85 (quoting Dkt. No. 19 at 10–11).

Stollings could also be terminated for cause if she engaged in "objectionable behavior." *Id.*

¶ 86.  The agreement defined objectionable behavior as:

> behavior, actions or activities that (i) subject either Coach or University to
> substantial ridicule or embarrassment; (ii) substantially adversely affects
> Coach's or University's reputation; (iii) substantially interferes with or
> substantially diminishes Coach's standing as a University ambassador and
> representative; or (iv) are substantially contrary to the best interests of the
> University, its students, or its athletic program.

*Id.* (quoting Dkt. No. 19 at 9).

Under the agreement, the determination of whether Stollings engaged in

objectionable behavior was in the sole discretion of Texas Tech's president.  Dkt. No. 19 at

10.  If terminated for cause, Texas Tech would be required to pay Stollings her salary until

her date of termination.  Dkt. No. 15 ¶ 88.  If wrongfully terminated, Texas Tech would be

required to pay Stollings under the liquidated-damages clause in the amount of 75% of her

base salary.  *Id.* ¶ 89.

### B.    Reports About Stollings's Program

Stollings represents that under her guidance, the women's basketball team began to

perform better not only in the sport, but also in the classroom.  *Id.* ¶ 18.  Despite this

success, she alleges that some members of the team "did not want to provide the energy and

resources needed to achieve success" and decided to transfer to other programs.  *Id.* ¶¶ 19–

20.  Stollings alleges that in order for the players to have a smooth transition to another

program, "NCAA rules require that student-athletes must claim that the transfer is based on

a desire to avoid a negative atmosphere or for physical and mental health reasons."  *Id.* ¶ 21.

Consequently, in late summer 2019, these departing students gave negative feedback about

Stollings's program.  *Id.* ¶ 129.

Following the negative feedback from the departing students, Texas Tech conducted two internal reviews of the women's basketball program. *Id.* ¶¶ 139, 170. Stollings represents that these reviews ultimately concluded that she had not acted inappropriately. *Id.* ¶ 24. Despite this conclusion, in August 2020, USA Today published an article that included interviews from the departing students about their experiences in Stollings's program. *Id.* ¶ 26. Stollings alleges that the contents of the article were false and unsubstantiated and that Hocutt assured her that she had Texas Tech's support. *Id.* ¶ 27.

### C.   Title IX Investigation

In March 2020, Stollings was informed of sexual-harassment allegations involving a member of her coaching staff and a student-athlete. *Id.* ¶ 162. Stollings reported these allegations to the Texas Tech Athletic Department, which then initiated a Title IX investigation. *Id.* ¶¶ 9–10. Stollings claims that Hocutt and the department were previously aware of these violations but intentionally ignored them. *Id.* ¶ 165–66. Consequently, Stollings alleges that this reporting and her participation in the Title IX investigation threatened to embarrass the athletic department and Hocutt. *Id.* ¶ 12. Texas Tech filed a Title IX complaint against the member of the coaching staff, who subsequently resigned before the investigation was completed. *Id.* ¶ 169.

As a result of these events, Texas Tech conducted its second internal review of Stollings's program. *Id.* ¶ 170. This investigation touched on both the alleged Title IX violation and the topics of the first internal review regarding the program's environment. *Id.* ¶ 173. Stollings alleges that like the first review, the results of the second investigation were positive with no adverse findings with respect to Stollings. *Id.* ¶¶ 176–77. However, following this review, Hocutt requested Stollings "to agree to three action items in order to alleviate any public scrutiny of the program." *Id.* ¶ 179. These were that Stollings (1) take a

one-year moratorium from using the heart-rate monitoring system; (2) keep watch on a particular coaching staff member's communication with student-athletes; and (3) make a special effort to be more available to the student-athletes.  *Id.*  She agreed to do so.  *Id.*

### D.    Alleged Discriminatory Conduct and Stollings's Termination

Despite his support, Stollings alleges that Hocutt devised a scheme to salvage his own job by terminating hers to strategically draw blame away from himself.  *Id.* ¶¶ 28–30. Stollings asserts that Texas Tech proceeded to terminate her at Hocutt's insistence in August 2020.  *Id.* ¶ 31.  Stollings alleges that her termination was a direct result of her actions in raising sexual-harassment concerns and participating in the Title IX investigation that brought negative publicity to Hocutt and the university.  *Id.* ¶ 198.

Stollings maintains that her termination was also based on Texas Tech's "discriminatory biases against female and gay and lesbian coaches."  *Id.* ¶ 34.  Stollings alleges that she and other female and gay and lesbian coaches were penalized for the same conduct of which male and heterosexual coaches were praised.  *See id.* ¶ 35.  Stollings also claims that her efforts to obtain additional support and resources for women's sports were met with resistance and eventual retaliation in the form of her termination.  *Id.* ¶ 15. Stollings alleges that the defendants propagated an unwritten rule that female and gay and lesbian coaches were required to accept lesser treatment than male heterosexual coaches. *Id.*  Specifically, she alleges that Texas Tech administrators, including Hocutt, regularly made derogatory remarks about women to her or around her and made statements characterizing women as untrustworthy and overly emotional.  *Id.* ¶¶ 93–98.  Moreover, she alleges that she was reprimanded for instituting the same training procedures as had been praised by male coaches—namely the heartrate monitoring system that she was instructed to cease using.  *See id.* ¶ 179.

After her termination, Stollings alleges that Hocutt "made knowingly false and malicious defamatory public statements" about her at a press conference. *Id.* ¶¶ 206–07. Specifically, his statements addressed her in both her personal and professional capacity with respect to her role as the women's basketball head coach and her relationship with the team. *Id.*

## 2.   Procedural History

Stollings filed her Original Complaint in October 2020.  Dkt. No. 1.  Defendants filed a motion to dismiss.  Dkt. No. 12.  Prior to responding to the motion, Stollings filed her First Amended Complaint (Dkt. No. 15), which is the current operative pleading at this stage.  Stollings brings claims against Texas Tech and Hocutt in his official capacity for breach of contract, fraud, fraudulent inducement, sex discrimination under both the Equal Protection Clause of the Fourteenth Amendment and Title VII of the Civil Rights Act of 1964, Title IX of the Education Amendments, and specific performance.  *Id.* ¶ 1.  She also brings claims against Hocutt in his individual capacity for defamation and intentional interference with a contract. [3]  *Id.*

---

[3] Stollings has sued Hocutt on various claims both in his official and individual capacity.  *See* Dkt. No. 15 at 33–47.  Stollings specifies that certain claims, such as defamation and tortious interference, are brought against Hocutt only in his individual capacity.  *See id.* at 37–39.  It is unclear from the pleadings which capacity she brings the remaining claims that are alleged against both Hocutt and Texas Tech because she does not specifically allege those claims against Hocutt in his individual or official capacity.  *See id.* at 33–47.  Based on the nature of the claims and their relationship to Hocutt's role as Texas Tech's athletics director, it appears that where it is unspecified, she intended to sue Hocutt in his official capacity.  Specifically, she raises claims against Hocutt based on a contract with Texas Tech and fraud related to contract negotiations.  *Id.* at 33–37.  Nothing she addresses in these claims reach Hocutt's individual actions as the individual claims do.  Additionally, in the parties' Joint Report Regarding Contents of Scheduling Order, Stollings distinguishes the official-capacity claims that are coupled with Texas Tech from the individual-capacity claims that are only mounted against Hocutt.  *See generally* Dkt. No. 27.

This conclusion is also consistent with most circuits' pleading requirements that presume a suit against a public official is only in their official capacity unless expressly stated otherwise.  *See Hafer v. Melo*, 502 U.S. 21, 25 n.* (1991) (recognizing that many circuits impose rigid pleading

Defendants filed a motion to dismiss Stollings's Amended Complaint based on both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 17. Defendants primarily argue that Stollings's claims are not adequately pled or are precluded by sovereign, absolute, or qualified immunity. The Court ordered Stollings to file a Rule 7(a) reply regarding Hocutt's qualified-immunity defense (Dkt. No. 21), which she did (Dkt. No. 26). The defendants filed a response (Dkt. No. 31), and Stollings then filed an additional reply without leave to do so (Dkt. No. 33). The motion to dismiss and Hocutt's qualified-immunity defense have been fully briefed and are ripe for review.

### 3.    Standards of Review

#### A.    Federal Rule of Civil Procedure 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the subject-matter jurisdiction of the district court to hear a case. "A case is properly dismissed for lack of subject matter jurisdiction when the Court lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (citation omitted). "[P]laintiff bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Lack of subject-matter jurisdiction may only be found by considering: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of

---

requirements in a Section 1983 claim that require plaintiffs to specifically plead that a suit for damages is brought against the state official in their individual capacity); *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989) (citing *Brandon v. Holt*, 468 U.S. 464, 474 (1985) ("It is not too much to ask that if a person . . . is to be subject to suit, the person or entity should be properly named and clearly notified of the potential for payment of damages individually.") (Burger, C.J., concurring). Therefore, the Court views Stollings's claims for defamation and tortious interference as the only claims against Hocutt in his individual capacity because she does not properly name or clearly notify Hocutt of potential individual liability on the remaining claims.

disputed facts." *King v. U.S. Dep't of Veteran Affairs*, 728 F.3d 410, 413 (5th Cir. 2013).

Therefore, "[i]n considering a challenge to subject matter jurisdiction, the district court is

free to weigh the evidence and resolve factual disputes in order to satisfy that it has the

power to hear the case." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014)

(internal quotations omitted).  Any action barred by the doctrine of sovereign immunity

must be dismissed for lack of subject matter jurisdiction.  *United States v. Mitchell*, 100 S. Ct.

1349, 1351 (1980); *United States v. U.S. Fidelity Co.*, 309 U.S. 506, 512 (1940).

### B.    Federal Rule of Civil Procedure 12(b)(6) Standard

A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Therefore, a complaint must allege

sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).

Defendants can challenge the sufficiency of a complaint through a motion to dismiss

under Rule 12(b)(6).  In evaluating a 12(b)(6) motion, the court must accept all well-pleaded

facts as true.  *Id.*  However, this tenet does not extend to legal conclusions.  *Id.*  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice." *Id.*  Moreover, a complaint may be dismissed under Rule 12(b)(6) when its

allegations indicate the existence of an affirmative defense that will bar the award of any

remedy.  *See EPCO Carbon Dioxide Prods. Inc. v. JP Morgan Chase Bank, N.A.*, 467 F.3d 466,

470 (5th Cir. 2006) ("Although dismissal under rule 12(b)(6) may be appropriate based on a

successful affirmative defense, that defense must appear on the face of the complaint."); *see*

*also* Benjamin Spencer, 5B *Federal Practice and Civil Procedure* § 1357 (3d ed. 2021).  But

motions to dismiss under 12(b)(6) are viewed with disfavor and are rarely granted.

*IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020).

Additionally, Federal Rule of Civil Procedure 9(b) requires parties alleging fraud to

"state with particularity the circumstances constituting fraud."  The Fifth Circuit interprets

Rule 9(b) strictly by "requiring a plaintiff pleading fraud to specify the statements contended

to be fraudulent, identify the speaker, state when and where the statements were made, and

explain why the statements were fraudulent."  *Hermann Holdings Ltd. v. Lucent Techs. Inc.*,

302 F.3d 552, 564–65 (5th Cir. 2002) (internal quotations omitted).  Allegations about

conditions of the mind, however, may be pleaded generally.  Fed. R. Civ. P. 9(b).

**4.      Analysis**

**A.      Sovereign Immunity**

A Rule 12(b)(1) motion for lack of subject-matter jurisdiction "must be considered by

the district court before other challenges since the court must find jurisdiction before

determining the validity of a claim."  *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172

(5th Cir. 1994) (internal quotations omitted).  Because any action barred by the doctrine of

sovereign immunity must be dismissed for lack of subject-matter jurisdiction, the Court

should address sovereign immunity first.  *See U.S. Fidelity Co.*, 309 U.S. at 512.

"In our constitutional scheme, a federal court generally may not hear a suit brought

by any person against a nonconsenting State."  *Allen v. Cooper*, 140 S. Ct. 994, 1000 (2020).

In other words, "[s]overeign immunity is the privilege of the sovereign not to be sued

without its consent."  *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011).

This immunity, however, is not without limits.  *Id.* at 254.  A federal court may

"entertain a suit against a nonconsenting State on two conditions."  *Allen*, 140 S. Ct. at

1000. "First, Congress must have enacted unequivocal statutory language abrogating the States' immunity from the suit." *Id.* (internal quotations omitted). "And second, some constitutional provision must allow Congress to have thus encroached on the States' sovereignty." *Id.* at 1001 (citation omitted). Therefore, "absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Stewart*, 563 U.S. at 254.

>           i.       **Texas Tech is an arm of the state and thus has sovereign immunity.**

The Eleventh Amendment's reference to actions "against one of the United States" includes "not only actions in which a state is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). "[N]ot all units of a state government are immunized from a federal lawsuit." *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 256 (5th Cir. 2020). To determine whether a unit qualifies as an arm of the state for the purposes of sovereign immunity, courts in the Fifth Circuit employ a six-factor test developed in *Clark v. Tarrant County*. 798 F.2d 736 (5th Cir. 1986); *see Providence Behav. Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 456 (5th Cir. 2018). The six *Clark* factors are:

> "(1) Whether the state statutes and case law view the agency as an arm of the state; (2) The source of the entity's funding; (3) The entity's degree of local autonomy; (4) Whether the entity is concerned primarily with local[,] as opposed to statewide, problems; (5) Whether the entity has the authority to sue and be sued in its own name; and (6) Whether the entity has the right to hold and use property."

*See Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999) (citing *Clark*, 798 F.2d at 744–45).

Here, Stollings does not appear to contest Texas Tech's arm-of-the-state status, and the Fifth Circuit has previously held that a state university—more specifically, Texas Tech

University—is an arm of the state and enjoys sovereign immunity. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 n.3 (5th Cir. 1996) ("Texas Tech, as a state institution, clearly enjoys Eleventh Amendment immunity."); *United States v. Texas Tech Univ.*, 171 F.3d 279, 289 n.14 (5th Cir. 1999) (same). Therefore, under Fifth Circuit precedent, the university at issue here is an arm of the state.

> ### ii.      Hocutt also enjoys sovereign immunity in his official capacity.

In order to eliminate confusion regarding personal- and official-capacity suits, the Supreme Court "emphasized that official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotations omitted). This is because "a judgment against a public servant in his official capacity imposes liability on the entity he represents." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (internal quotations omitted). "Suits against state officials in their official capacity therefore should be treated as suits against the State." *Hafer*, 502 U.S. at 25 (quoting *Graham*, 473 U.S. at 166).[4]

Here, Stollings asserts various claims against Hocutt separately in his official and individual capacity. Defendants only argue that Hocutt enjoys sovereign immunity from

---

[4] This general rule is subject to the well-established exception of the *Ex parte Young* doctrine, which permits a plaintiff to sue a state official for injunctive relief in order to end a continuing violation. Under those circumstances, the official is not considered the state for sovereign-immunity purposes. *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004); *Virginia Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011). While defendants spend a significant amount of briefing arguing that the *Ex parte Young* exception does not apply, Stollings does not attempt to rebut this argument. Accordingly, the Court applies the general rule because Stollings has waived any argument that the *Ex parte Young* exception applies here to give the Court jurisdiction. *See Matter of Dall. Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (concluding the plaintiff abandoned a claim by not rebutting the defendant's argument at the motion-to-dismiss stage). Additionally, sovereign immunity impacts subject-matter jurisdiction, and Stollings has the burden to demonstrate the Court's jurisdiction. *Ramming*, 281 F.3d at 161. The Court also finds that Stollings fails to carry this burden with respect to defendants' sovereign-immunity argument because she presents no argument that the *Ex parte Young* exception applies here.

suit with respect to the claims that Stollings asserts against Texas Tech and Hocutt in his

official capacity.  Accordingly, the Court finds that Hocutt enjoys arm-of-the-state status for

claims raised against him in his official capacity.

> ### iii.      Texas Tech and Hocutt in his official capacity are immune from suit with respect to Stollings's breach of contract, fraud, and fraudulent inducement claims.

Because Texas Tech and Hocutt in his official capacity enjoy sovereign immunity,

the Court must determine whether this status protects them from suit here.  Texas Tech and

Hocutt both argue that sovereign immunity bars Stollings's contract-related claims (breach

of contract and specific performance), both counts of fraud, and fraudulent inducement.  As

addressed below, the Court finds that each of these claims are barred by sovereign immunity

and, thus, are dismissed.

> ### a.      Stollings's contract-related state-law claims are barred by sovereign immunity.

Stollings brings breach-of-contract and specific-performance claims against Texas

Tech and Hocutt alleging that she was terminated without cause and that the defendants

failed to pay her as required by the employment agreement.  Dkt. No. 15 at 33–34, 45.

Stollings also seeks a declaratory judgment that she did not breach her employment contract

and that she was wrongfully terminated.  *Id.* at 47.  Texas Tech and Hocutt argue that

sovereign immunity precludes these state-law claims, Dkt. No. 18 at 10, and the Court

agrees because the state has not waived immunity to suit here.

"When the state contracts with a private party, it waives immunity from *liability*.  But

the State does not waive immunity from *suit* simply by contracting with a private party."

*Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 854 (Tex. 2002) (citation

omitted).  "[Moreover] a plaintiff cannot circumvent the doctrine of sovereign immunity by

seeking declaratory relief that essentially resolves a breach of contract issue." *Webb v. City of Dallas*, 314 F.3d 787, 793 n.18 (5th Cir. 2002) (citing *IT-Davy*, 74 S.W.3d at 861). But this does not mean that a contracting party with the state cannot seek a remedy or enforce its contractual rights. *IT-Davy*, 74 S.W.3d at 854. If a party "feels aggrieved, it can seek redress by asking the Legislature to waive immunity from suit." *Id.* (citing Tex. Civ. Prac. & Rem. Code §§ 107.001–.005).

Here, Stollings has neither alleged nor argued that the state has waived immunity in any way. Additionally, there is nothing in the pleadings that suggests Stollings requested a waiver from the Texas Legislature. Instead, Stollings, relying on nonbinding case law applying other states' laws, argues that the enforcement of sovereign immunity in contracts cases is against public policy. Dkt. No. 25 at 28. But that argument falls short.

First, this argument must fail because it is barred by binding precedent. *See Webb*, 314 F.3d at 793. In any event, the argument is likewise undermined by Texas law. Texas has an established procedure to resolve grievances in contract disputes where the state has not waived sovereign immunity. Civ. Prac. & Rem. §§ 107.001–.005. This procedure acknowledges that Texas has waived immunity from liability but not immunity from suit and, thus, cuts against Stollings's policy argument and supports that this Court is not the proper place to resolve her dispute. While legislative consent to suit may be seldom granted, Texas is within its rights to limit such suit. *See Webb*, 314 F.3d at 793. In light of this, the Court finds that Stollings fails to carry her burden of demonstrating that the Court has subject-matter jurisdiction to hear these contract-related claims. Accordingly, the Court dismisses these claims against defendants for want of jurisdiction and declines to weigh the adequacy of the pleadings on these issues.

- 13 -

### b.   Fraud and Fraudulent Inducement

Stollings also brings claims for fraud and fraudulent inducement against Texas Tech and Hocutt in his official capacity.  Dkt. No. 15 at 34–37.  Defendants contend that sovereign immunity bars these state-law tort claims because the state has not waived its immunity.  The Court agrees; thus, they are dismissed for lack of subject-matter jurisdiction.

"Texas, its agencies, and subdivisions generally enjoy sovereign immunity from tort liability." *Subbiah v. Kiel*, 850 F. Supp. 2d 653, 660 (N.D. Tex. 2011) (citing *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002)).  The Texas Tort Claims Act (TTCA) provides the exclusive and limited means of recovery against the government under Texas law.  *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008).  "Under the [TTCA], the only tort claims not barred by sovereign immunity are those that involve 'the use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property.'"  *Subbiah*, 850 F. Supp. 2d at 660 (citing Civ. Prac. & Rem. Code § 101.021).  The TTCA explicitly declines to extend this waiver to intentional torts.  *See* Civ. Prac. & Rem. Code § 101.057(2) ("This chapter does not apply to a claim . . . arising out of assault, battery, false imprisonment, or any other intentional tort . . . .).

Stollings fails to demonstrate waiver of the defendants' sovereign immunity with respect to her state-law tort claims.  In her response to defendants' motion to dismiss, Stollings argues that she has adequately alleged valid claims for fraud and fraudulent inducement; however, she does not address the defendants' sovereign-immunity defense at all.  Dkt. No. 25 at 30–31.  Stollings has therefore failed to carry her burden to demonstrate subject-matter jurisdiction with regard to her fraud and fraudulent-inducement claims.  Accordingly, the Court dismisses these fraud-based claims for want of jurisdiction and declines to determine whether they are adequately pled.

**B.      42 U.S.C. § 1983 Claims**

Stollings also brings claims against Hocutt in his official capacity[5] and Texas Tech for violations of constitutional and civil rights under 42 U.S.C. § 1983.  These claims are also dismissed because the defendants are not the proper parties given the financial relief sought by Stollings.

"Section 1983 provides a private right of action for damages to individuals who are deprived of 'any rights, privileges, or immunities' protected by the Constitution or federal law by any 'person' acting under the color of state law."  *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007).  The United States Supreme Court has held that "neither a state [n]or persons acting in their official capacities are 'persons' under § 1983."  *Will v. Michigan State Dep't of Police*, 491 U.S. 58, 71 (1989).  However, state officials are persons when sued in their official capacities for injunctive relief.  *Id.* at 71 n.10.

Here, Stollings only seeks "compensatory damages, general damages, special damages, nominal damages, statutory damages and punitive damages" for her Section 1983 claim.  Dkt. No. 15 at 47.  Nowhere in her complaint does she seek injunctive relief.  *See generally* Dkt. No. 15.  Defendants contend that they are not appropriate parties for the

---

[5] While Stollings only explicitly pleads a Section 1983 claim against Hocutt in his official capacity, and fails to name him in his individual capacity, her Rule 7(a) Reply appears to be premised on an individual claim.  *See* Dkt. No. 26 at 11.  The reply is the first and only document in the record that suggests Stollings might intend to bring this claim against Hocutt in his individual capacity.  The Court must verify jurisdiction and that the claim satisfies federal pleading requirements before it addresses a qualified-immunity defense.  *See Lincoln v. Turner*, 874 F.3d 833, 847 (5th Cir. 2017).  Stollings's Section 1983 claim is alleged against "defendants."  While this could include an individual-capacity claim, Stollings's use of "defendants" throughout her filings exclusively refers to Texas Tech and Hocutt in his official capacity.  *See, e.g.*, Dkt. No. 25 (discussing defendants' actions that could only be on behalf of the university); Dkt. No. 26 at 14 (referencing defendants' actions that could only be made by the university); Dkt. No. 27 at 1–3 (detailing claims against "defendants" that could only rationally be brought against a governmental entity or an officer in their official capacity).  Because Stollings's First Amended Complaint (Dkt. No. 15) does not allege a claim against Hocutt in his individual capacity, the Court declines to assume that an individual claim exists or determine the adequacy of the claim or Hocutt's qualified-immunity defense.

Section 1983 claim because Stollings only seeks monetary damages, and therefore, neither Texas Tech nor Hocutt in his official capacity are "persons" for the purposes of the claim. Dkt. No. 18 at 23. In her response, Stollings's only argument is that her Section 1983 claim necessarily survives because she has stated a claim under Title VII. Dkt. No. 25 at 27. But whether she states a Title VII claim is irrelevant to whether she pleads a proper claim under Section 1983. Stollings does not address whether the defendants are persons for the purposes of the claim or whether she seeks injunctive relief to render Hocutt an appropriate party.

Fifth Circuit case law also supports the defendants' argument. In *Stotter v. University of Texas at San Antonio*, for example, the plaintiff alleged a due-process claim against UTSA under Section 1983. 508 F.3d at 821. The Fifth Circuit reasoned that because state universities are not persons under Section 1983, the plaintiff's claim against UTSA was invalid. Similarly, in *MedRX/Systems, P.L.L.C. v. Texas Department of State Health Services*, the plaintiff sought damages against the Texas Department of State Health Services and its commissioner in his official capacity under Section 1983. 633 F. App's 607, 610 (5th Cir. 2016). The Fifth Circuit upheld the district court's dismissal of these claims on the basis that neither an arm of the state nor a state official may be sued for economic damages or other retrospective relieve under Section 1983. *Id.*

The Court concludes that because Stollings only seeks monetary relief for her Section 1983 claim, both Texas Tech and Hocutt in his official capacity are not persons under the statute and, therefore, are not appropriate parties for such a claim. Accordingly, the Court dismisses the Section 1983 claim.

### C.    Title VII Discrimination Claim

Stollings alleges a claim for Title VII discrimination against Texas Tech and Hocutt under 42 U.S.C. § 2000e-2(a).[6]  Dkt. No. 15 at 40–41.  The Court finds that Stollings has adequately alleged a Title VII claim against Texas Tech but dismisses the claim against Hocutt because he is not an appropriate party to this claim.

Title VII makes it unlawful for an employer to discharge any individual, or otherwise discriminate against any individual, because of the individual's sex.  42 U.S.C. § 2000e-2(a)(1).  Specifically, employers may not "limit, segregate, or classify [its] employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex."  § 2000e-2(a)(2).  In other words, "an employer who intentionally treats a person worse because of sex—such as by firing the person for actions or attributes it would tolerate in an individual of another sex—discriminates against that person in violation of Title VII."  *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1740 (2020).  "It doesn't matter if other factors besides the plaintiff's sex contributed to the decision."  *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1741 (2020).  "[I]f changing the employee's sex would have yielded a different choice by the employer—a statutory violation has occurred."  *Id.*  Additionally, the Supreme Court held recently that for the purposes of Title VII, sex may also include an individual's sexual orientation.  *Id.*  at

---

[6] While Coach Stollings also includes a retaliation claim under Title VII in a subheading of her amended complaint, she does not specifically allege any retaliatory conduct in the context of Title VII to support this claim.  Additionally, in the parties' joint status report regarding the contents of the scheduling order (Dkt. No. 27), Stollings only raises issues with regard to her Title VII discrimination claim and only raises retaliation in the context of Title IX.  Accordingly, to the extent that Stollings maintains a retaliation claim under Title VII, the Court dismisses the claim for failure to state a claim because there are no supporting factual allegations, and Stollings has failed to respond to defendants' arguments with respect to this claim.

1741.  However, "[i]ndividuals are not liable under Title VII in either their individual or official capacities." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003). Therefore, the employer might be liable, but not individuals. *Id.*

At the motion-to-dismiss stage, the Court must analyze the Title VII claim under the standards of *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).[7]  Under *Swierkiewicz*, "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff *because of* her protected status." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (citing *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (quotations omitted)). The plaintiff "need not make out a prima facie case of discrimination [under *McDonnell Douglas*] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj*, 714 F.3d at 331.  But plaintiffs must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make [their] case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).

If the claim depends on circumstantial evidence of discrimination, the Fifth Circuit has stated that "it may be helpful to refer to *McDonnell Douglas* to understand whether a plaintiff has sufficiently pleaded an adverse employment action taken '*because of*' [her] protected status as required under *Swierkiewicz*." *Olivarez*, 997 F.3d at 600.  Therefore, the Court may consider this framework, but need not find explicit evidence to support each element of a claim at this stage.  *McDonnell Douglas* requires that the plaintiff show that it:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the

---

[7] While both sides argue this claim under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973), the Fifth Circuit has held that this evidentiary standard is inappropriate at the motion-to-dismiss stage.  *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021).

employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group.

*See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citing *McDonnell Douglas*, 411 U.S. at 803).

Preliminarily, the Court dismisses this claim against Hocutt because Fifth Circuit precedent precludes individual liability under Title VII. *Ackel*, 339 F.3d at 381. As for the claims against Texas Tech, Stollings will ultimately have to prove the elements of the *McDonnel Douglas* framework. Thus, it is helpful for the Court consider it in determining whether the pleadings are sufficient. However, the Court does not require that the plaintiff produce any specific evidence of each element at this stage because that inquiry is best reserved for the summary-judgment stage. *See Cicalese*, 924 F.3d at 768 (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405–06 (5th Cir. 2006)).

Weighing the *McDonnell Douglas* framework is also beneficial because the parties thoroughly briefed these elements. The parties agree that the framework's first three factors are present here. Stollings is protected on the basis of sex, was qualified for her position as head basketball coach, and suffered an adverse employment action through termination. However, the parties disagree as to what protected class Stollings belongs.

Stollings argues that she belongs to two distinct protected classes under Title VII— based on sex and sexual orientation. Dkt. No. 25 at 24. Conversely, defendants argue that she is only protected on the basis of sex, not sexual orientation. Dkt. No. 28 at 4. Stollings only cites to *Bostock* to support her argument that sexual orientation is its own protected class. Dkt. No. 25 at 26. While *Bostock* held that Title VII protection based on sex classification includes an individual's sexual orientation, it did not establish a new or otherwise separate protected class, but instead clarified the scope of sex classification. *See*

*Bostock*, 140 S. Ct. at 1739 (interpreting the definition of sex as opposed to creating a new, independent protected class).  Notably, *Bostock* did not definitively decide the definition of "sex," but it premised its analysis on the assumption that in 1964 the term sex "refer[ed] only to biological distinctions between male and female" and did not include "norms concerning gender identity."[8]  *Id.* at 1739.

Additionally, Title VII explicitly identifies protected classes to include "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The expression of one thing implies the exclusion of others.  *Rittinger v. Healthy Alliance Life Ins. Co.*, 914 F.3d 952, 957 n.10 (5th Cir. 2019) (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012)).  Therefore, a plain text reading of the statute makes clear that sexual orientation is not its own protected class independent of sex.  "After all, only the words on the page constitute the law adopted by Congress and approved by the President."  *Bostock*, 140 S. Ct. at 1738.  As a result, the Court concludes that Stollings is protected on the basis of sex, which includes sexual orientation in light of *Bostock*, but sexual orientation does not constitute a distinct class as Stollings asserts.

In any event, there are two ways to satisfy the fourth element of the *McDonnell Douglas* framework —by demonstrating either that she (1) "was replaced by someone outside [her] protected group," or (2) "was treated less favorably than other similarly situated employees outside the protected group."  *See McCoy*, 492 F.3d at 556 (citing

---

[8] *See Grimm v. Gloucester Cnty. Sch. Brd.*, 972 F.3d 586, 633 (4th Cir. 2020) (Niemeyer, J. dissenting) (highlighting the limitations of *Bostock*'s holding on the definition of "sex"); *Adams v. Sch. Brd. Of St. Johns Cnty.*, 3 F4th 1299, 1321 (11th Cir.) (Pryor, J. dissenting) (same) *vacated, reh'g en banc granted*, No. 18-13592, 2021 3722168 (Aug. 23, 2021); *Whitman-Walker Clinic, Inc. v. Dep't of Health and Human Servs.*, 485 F. Supp. 3d 1, 15 (D.D.C. 2020) (same).  *Bostock* also appeared to reinforce the religious-employer exemption and the commitment to safeguard employers' religious convictions. *See* 140 S. Ct. at 1753–54; *Religious Sisters of Mercy v. Azar*, 513 F. Supp. 3d 1113, 1129–30 (D.N.D. 2021).

*McDonnell Douglas*, 411 U.S. at 803).  The Court finds that Stollings has sufficiently alleged a claim under the second method based on her allegations that she was treated less favorably than other similarly situated employees outside of her protected group.[9]

There are several different ways that a plaintiff may allege a plausible Title VII disparate-treatment claim.  These include identifying derogatory remarks about the protected class or status, a discrepancy or reduction in pay, or a demotion.  *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 118 (5th Cir. 2021) (holding sex-specific derogatory terms may be used to establish discrimination under Title VII); *Cicalese*, 924 F.3d at 768 (holding that the plaintiff sufficiently alleged disparate treatment when his employer made derogatory anti-Italian remarks).

Here, Stollings alleges that the defendants' "discriminatory conduct took the form of lower pay, worse treatment, a hostile environment, disparate treatment, and, ultimately, unjustifiable termination."  Dkt. No. 15 ¶ 260.  To support this claim, Stollings states that "male and heterosexual coaches were treated better than female and gay and lesbian coaches" (*Id.* ¶ 91) and that the defendants "regularly made derogatory remarks about women" (*Id.* ¶ 93).[10]  She alleges that the defendants "fostered an environment which saw women and gays and lesbians as inferior, and penalized female and gay and lesbian coaches who refused to conform" (*Id.* ¶ 119).  Stollings also gives examples of some of these

---

[9] While the Court recognizes that Stollings also argues that she has a Title VII claim based on the sexual orientation of her replacement, the Court need not ultimately resolve that issue because, independent of this position, Stollings's Title VII claim survives dismissal.

[10] Stollings allocates a significant portion of her pleadings to the discrepancies in resources between the men's and women's athletic programs.  These statements do not support any of her claims; instead, these allegations appear to be an attempt to adjudicate the rights of others under Title VII or Title IX, which are not cognizable as Stollings lacks standing to do so.  *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 251 (5th Cir. 1997) (holding a college basketball coach lacked standing to assert the rights of her students under Title IX).

circumstances.  For example, she alleges that she was punished for engaging in the same conduct as male coaches in similar programs—the use of heartrate-monitoring systems.  *See* Dkt. No. 15 ¶¶ 120–24, 133–34.  The allegations concerning derogatory remarks and punishment for using the same methods for which male coaches were praised are sufficient to demonstrate less favorable treatment and state a claim under Title VII at this stage.  *See Cicalese*, 924 F.3d at 768.  Accordingly, the Court finds that Stollings has stated a claim upon which relief may be granted and denies the motion to dismiss with respect to the Title VII claim against Texas Tech.[11]

### D.    Title IX Retaliation Claim

Stollings also brings a claim against Texas Tech and Hocutt under Title IX for discrimination on the basis of sex and retaliation based on her role in reporting an alleged Title IX violation within the athletic program.  Dkt. No. 15 at 41–42.  Title 20, United States Code, Section 1681 (Title IX) provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[12]  Title IX also prohibits retaliation against third parties because they complained about Title IX violations.  *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005).  However, the Fifth Circuit has expressly held that Title VII is the exclusive remedy for alleged employment discrimination.  *Lowery v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 248 (5th Cir. 1997); *Lakoski v. James*, 66 F.3d 751, 754 (5th Cir. 1995).  Since *Jackson*,

---

[11] Stollings does not allege a specific comparator coach to demonstrate disparate treatment but scrutinizing whether fellow employees are really similarly situated is better suited for the summary-judgment stage and should not result in a dismissal here.  *See Cicalese*, 924 F.3d at 768.

[12] There are several exceptions outlined in Section 1681; however, neither party argues that those exceptions apply in this case.

the Fifth Circuit continues to hold that Title VII preempts claims of employment discrimination under Title IX.  *See Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1118 (5th Cir. 2021).

Despite the general rule, Fifth Circuit precedent provides that there are some exceptions to Title VII preemption of Title IX claims made by employees of federally funded institutions.  Specifically, "although Title VII preempts a private right of action for employment discrimination under Title IX, Title VII does not prohibit retaliation against complainants who challenge the misallocation of resources in violation of Title IX, as such complaints are wholly unrelated to the discriminatory employment practices proscribed by title VII."  *Taylor-Travis*, 984 F.3d at 1118 (internal quotations omitted).  Thus, for a Title IX retaliation claim, the Court must "'strip away' any allegations that would support a private cause of action for retaliation under Title VII" and "distinguish between retaliation suffered by [the plaintiff] as a consequence of her participation in complaints and investigations challenging alleged employment discrimination by [the university] and retaliation suffered as a consequence of her participation in complaints and investigations challenging alleged violations of Title IX."  *Id.*

Preliminarily, to the extent that Stollings attempts to bring an employment sex-discrimination claim under Title IX, the Court dismisses this claim because Title VII provides the exclusive remedy for discrimination in employment matters.  *See Lakoski*, 66 F.3d at 754.  Moreover, the Court dismisses the Title IX claim against Hocutt because "only federally funded educational institutions are subject to liability in private causes of action under Title IX."  *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 636 (1999); *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) ("Title IX reaches institutions . . . but it has consistently been interpreted as not authorizing suit against school

- 23 -

officials, teachers, and other individuals.").  But the Court must determine whether Stollings states a claim of retaliation under Title IX separate from her alleged employment-based discrimination.

To establish a prima facie claim of Title IX retaliation, a plaintiff must allege that (1) it participated in a protected activity under Title IX; (2) the defendant took an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.  *See Taylor-Travis*, 984 F.3d at 1119.  Complaining of or reporting violations of Title IX qualifies as a protected activity under the statute.  *See Jackson* 544 U.S. at 174.

Here, the Court concludes that Stollings adequately alleges a Title IX claim against Texas Tech to survive dismissal.  The parties do not dispute that reporting a Title IX violation is a protected activity and that Texas Tech took an adverse employment action by terminating Stollings.  Defendants, however, merely contend that Stollings's claim is preempted by Title VII because it is premised on employment discrimination and, therefore, is not a protected activity.  Dkt. No. 18 at 19.  Defendants do not address Stollings's argument that her Title IX retaliation claim is based on her reporting activity and not her protected class.

The Court finds that Stollings's allegations that she was terminated for her reporting conduct are not tied to her sex or sexual orientation.  Stollings does not allege that the Title IX retaliation was a result of her membership in a protected class but, instead, that she engaged in a protected activity by reporting the Title IX violation.  Dkt. No. 15 at ¶¶ 162–80, 183.  Based on the pleadings, it appears that the facts surrounding the alleged retaliation claim are entirely separate from those supporting her Title VII claim; therefore, the Court concludes that Title VII does not preempt Stollings's Title IX retaliation claim.

The only remaining element at issue is causation.  The Court also finds that Stollings adequately alleges a causal connection because she presents more than mere conclusory statements to support it.  While Stollings expressly states that she was terminated in retaliation for her reporting, she also alleges that the report brought potential embarrassment to the university and Hocutt, which then resulted in her termination.  Dkt. No. 15 at 25–26. Stollings also alleges that her termination was four months after her report, which may lend itself to an inference that the termination was a result of this report.  Accordingly, taking all well-pleaded facts as true—as it must at this stage—the Court concludes that Stollings adequately states a claim for retaliation under Title IX against Texas Tech.

### E.    The Court dismisses the tort claims against Hocutt in his individual capacity because they are precluded by the Texas Tort Claims Act.

Stollings also brings various tort claims against Hocutt in his individual capacity, including defamation, defamation per se, and tortious interference with a contract. Defendants argue that these claims should be dismissed because the alleged tortious conduct upon which the claims are based were within the scope of Hocutt's employment and, therefore, should have been brought against Texas Tech.  Additionally, they contend that these intentional-tort claims would be barred by sovereign immunity if brought against Texas Tech.  Stollings does not respond to these arguments but merely states that Hocutt's actions were independent and unrelated to his role as athletic director without any further explanation.  *See* Dkt. No. 25 at 31.  The Court dismisses these claims against Hocutt in his individual capacity because Stollings fails to allege facts that indicate his conduct was outside of the scope of his employment.

These are state-law claims; therefore, Texas state law governs their viability.  The TTCA "encourages, and in effect mandates, plaintiffs to pursue lawsuits against

governmental units rather than their employees when the suit is based on the employee's conduct within the scope of employment." *Texas Adjunct Gen.'s Off. v. Ngakoue*, 408 S.W.3d 350, 350 (Tex. 2013) (citing Tex. Civ. Prac. & Rem. Code § 101.106). Under the TTCA, scope of employment means "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employer by a competent authority." Civ. Prac. & Rem. § 101.001(5). An employee's conduct may be within the scope of employment "even if done in part to serve the purposes of the employee or a third person." *Anderson v. Bessman*, 365 S.W.3d 119, 125–26 (Tex. App.—Houston [1st Dist.] 2001, no pet.). Additionally, intentional torts or negligently performed duties may fall within the scope of employment so long as the conduct served any purpose of the employer. *See Laverie v. Wetherbe*, 517 S.W.3d 748, 755–56 (Tex. 2017); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994); *Fink v. Anderson*, 477 S.W.3d 460, 471 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

Here, Hocutt's alleged tortious conduct involves his communications with the Texas Tech president regarding Stollings's role as head coach and statements made during a press conference following her termination. *See* Dkt. No. 15 at 37–39, 45–47. Stollings alleges that these actions were not within the scope of Hocutt's employment, but she provides no explanation for this assertion. Hocutt is the Athletic Director and therefore responsible for the entire athletic department at Texas Tech. His communications with the president appear to have been necessary to his role because the president ultimately had the final say on whether Stollings remained employed by the university under the terms of her employment agreement. Additionally, the press conference where the alleged statements were made was something routine in his role to communicate with the community and the public regarding the state of academic and athletic affairs. Plaintiff has not alleged facts to

support a plausible inference that Hocutt was participating in the press conference as an individual and not on behalf of Texas Tech in his role as the athletic director. Despite Stollings's allegations that Hocutt engaged in this conduct for personal gain, the pleadings indicate that he was still acting within the scope of his employment as he advanced the goals and purposes of Texas Tech in doing so, and Stollings's allegations otherwise are conclusory.[13]  Accordingly, the Court dismisses these claims because Stollings is barred from bringing them against Hocutt in his individual capacity by the TTCA.[14]

### F.      Qualified Immunity and Supplemental Jurisdiction

Hocutt asserts qualified immunity in this case. Because the Court dismisses each claim against Hocutt, both individually and in his official capacity, it need not address whether qualified immunity applies. *See Lincoln*, 874 F.3d at 847 (addressing whether the plaintiff stated a claim under the Federal Rules of Civil Procedure before assessing whether qualified immunity barred its claims).

The defendants also request that if the Court grants their motion with respect to the federal claims, each of the state-law claims raised against them should be dismissed for lack of jurisdiction as the Court would lack supplemental jurisdiction. The Court need not address this argument for two reasons. First, each of the state-law claims are dismissed on an alternative basis. And second, the Court does not dismiss the Title VII and Title IX

---

[13] Stollings alleges that Hocutt's conduct was not in the best interest of the university when he made these statements; however, that is not the standard the Court must consider. Instead, the Court must determine if any purpose of his employer was served through his conduct. Discussing Stollings with the president and participating in the press conference, no matter his alleged wrongful or negligent conduct or potential additional incentive, still advances a university purpose.

[14] The Court also notes that even if Stollings brought these claims against Texas Tech or Hocutt in his official capacity, these intentional torts would also be barred by sovereign immunity.

claims against Texas Tech, meaning the federal causes of action which grant this Court jurisdiction will remain live.

      **G.**    **The Court grants Stollings's request for leave to amend.**

      Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave when justice so requires." And the Fifth Circuit has dictated a strong policy favoring amendment of pleadings after dismissal. *Great Plains Tr. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). In fact, the Fifth Circuit has even held that a district court abuses its discretion if, after dismissal, it denies a timely motion to amend without justification, at least when the defendant would not be unduly prejudiced by the amendment. *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010).

      In her response to defendants' motion to dismiss, Stollings requests leave to amend her complaint in the event that the Court grants the motion. Considering the strong policy favoring amendment of pleadings after the dismissal of claims and that this is the first dismissal of claims, the Court grants Stollings leave to amend her complaint.

**5.**    **Conclusion**

      The Court grants the motion to dismiss in part and denies it in part. Accepting, as it must at the dismissal stage, all well-pleaded facts as true, the Court finds that Stollings has stated a claim under Title VII for discrimination and Title IX for retaliation and that these claims are not barred. But the Court finds that the state-law claims are barred by sovereign immunity and that the defendants are not the proper parties to a Section 1983 claim.

Accordingly, the Court dismisses these claims.  The Court grants Stollings's request for leave to amend her complaint, and she may do so within 21 days of the issuance of this order.

      So ordered on August 25, 2021.

                                      _____
                                      JAMES WESLEY HENDRIX
                                      UNITED STATES DISTRICT JUDGE