UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

MARLENE STOLLINGS,

     Plaintiff,

v.

TEXAS TECH UNIVERSITY, et al.,

     Defendants.

No. 5:20-CV-250-H

## MEMORANDUM OPINION AND ORDER

This is the latest chapter of Marlene Stollings's suit against Texas Tech and its Athletic Director, Kirby Hocutt, after she was terminated as head coach of the women's basketball team. After the Court partially dismissed Stollings's first amended complaint (Dkt. No. 38), plaintiff filed a second amended complaint (Dkt. No. 42). She repled all allegations and claims, and she added a new Section 1983 claim (Count XIII) against Hocutt, in his official capacity, for violations of the Equal Protection Clause. Dkt. No. 42 at 48–52. Defendants filed another partial motion to dismiss all claims, excluding the previously upheld Title VII and IX claims (Counts VII & VIII). Dkt. No. 43. The Court dismisses Stollings's state-law claims (Counts I-VI, XI), state-law-based relief claims (Counts X, XII), and monetary-damages claim under Section 1983 (Count IX) for reasons stated in its prior order (Dkt. No. 38) and below. Count XIII, insofar as it fails to request prospective relief to redress an ongoing constitutional harm other than Stollings's reinstatement, is also dismissed. Finally, the Court finds that Stollings has sufficiently pled a claim for reinstatement under Count XIII—though, to be clear, reinstatement is not a feasible remedy. In doing so, the Court partially grants Defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. No. 43).

1.     **Factual Background**

    A.     **Stollings's Employment Contract**

       Texas Tech University is a public higher-education institution.  Plaintiff Marlene

Stollings was the head coach of Texas Tech's women's basketball team from April 2018

until her termination in August 2020.  Dkt. No. 42 ¶¶ 2–3, 31.  Defendant Kirby Hocutt is

the Athletic Director for Texas Tech and is responsible for supervising all collegiate sports at

the university.  *Id.* ¶¶ 12, 58.  In this role, Hocutt is also responsible for recruiting, vetting,

and hiring head coaches and staff for Texas Tech's athletic program.  *Id.* ¶ 59.

       In early 2018, Texas Tech approached Stollings about taking over its women's

basketball program.  *Id.* ¶ 75.  In April 2018, Stollings entered into an employment

agreement with Texas Tech that established her as the head coach of the women's

basketball team until March 31, 2024.  *Id.* ¶¶ 3, 77.  The agreement guaranteed Stollings an

annual salary of $300,000 and set out various bonuses for specified events.  *Id.* ¶¶ 83–84.

       The employment agreement permitted Texas Tech to terminate Stollings "for cause

only if, 'based on substantial evidence,' Coach Stollings failed to perform her duties or acted

in harmful or inappropriate ways, such as a 'failure or refusal to perform assigned duties' or

'serious violation of local, state, or federal laws.'"  *Id.* ¶ 85 (quoting Dkt. No. 19 at 10–11).

Stollings could also be terminated for cause if she engaged in "objectionable behavior."  *Id.*

¶ 86.  The agreement defined objectionable behavior as:

> behavior, actions or activities that (i) subject either Coach or University to
> substantial ridicule or embarrassment; (ii) substantially adversely affects
> Coach's or University's reputation; (iii) substantially interferes with or
> substantially diminishes Coach's standing as a University ambassador and
> representative; or (iv) are substantially contrary to the best interests of the
> University, its students, or its athletic program.

*Id.* (quoting Dkt. No. 19 at 9).

Under the agreement, the determination of whether Stollings engaged in objectionable behavior was in the sole discretion of Texas Tech's "President, in consultation with the Director of Intercollegiate Athletics." Dkt. No. 19 at 10. If terminated for cause, Texas Tech would be required to pay Stollings her salary until her date of termination. Dkt. No. 42 ¶ 88. If terminated without cause, Texas Tech would be required to pay Stollings under the liquidated-damages clause in the amount of 75% of her base salary. *Id.* ¶ 89.

### B.     Reports About Stollings's Program

Stollings represents that under her guidance, the women's basketball team began to perform better not only in the sport, but also in the classroom. *Id.* ¶ 18. Despite this success, she alleges that some members of the team "did not want to provide the energy and resources needed to achieve success" and decided to transfer to other programs. *Id.* ¶¶ 19–20. Stollings alleges that in order for the players to have a smooth transition to another program, "NCAA rules require that student-athletes must claim that the transfer is based on a desire to avoid a negative atmosphere or for physical and mental health reasons." *Id.* ¶ 21. Consequently, in late summer 2019, these departing students gave negative feedback about Stollings's program. *Id.* ¶ 129.

Following the negative feedback from the departing students, Texas Tech conducted two internal reviews of the women's basketball program. *Id.* ¶¶ 139, 170. Stollings represents that these reviews ultimately concluded that she had not acted inappropriately. *Id.* ¶ 24. Despite this conclusion, in August 2020, USA Today published an article that included interviews from the departing students about their experiences in Stollings's program. *Id.* ¶ 26. Stollings alleges that the contents of the article were false and unsubstantiated and that Hocutt assured her that she had Texas Tech's support. *Id.* ¶ 27.

### C.     Title IX Investigation

In March 2020, Stollings was informed of sexual-harassment allegations involving a member of her coaching staff and a student-athlete.  *Id.* ¶ 162.  Stollings reported these allegations to the Texas Tech Athletic Department, which then initiated a Title IX investigation.  *Id.* ¶¶ 9–10.  Stollings claims that Hocutt and the department were previously aware of these violations but intentionally ignored them.  *Id.* ¶¶ 165–66.  Consequently, Stollings alleges that this reporting and her participation in the Title IX investigation threatened to embarrass the athletic department and Hocutt.  *Id.* ¶ 12.  Texas Tech filed a Title IX complaint against the member of the coaching staff, who subsequently resigned before the investigation was completed.  *Id.* ¶¶ 168–69.

As a result of these events, Texas Tech conducted its second internal review of Stollings's program.  *Id.* ¶ 170.  This investigation touched on both the alleged Title IX violation and the topics of the first internal review regarding the program's environment.  *Id.* ¶ 173.  Stollings alleges that, like the first review, the results of the second investigation were positive with no adverse findings against her.  *Id.* ¶¶ 176–77.  However, following this review, Hocutt requested Stollings "to agree to three action items in order to alleviate any public scrutiny of the program."  *Id.* ¶ 179.  Hocutt asked Stollings to (1) take a one-year moratorium from using the heart-rate monitoring system; (2) keep watch on a particular coaching staff member's communication with student-athletes; and (3) make a special effort to be more available to the student-athletes.  *Id.*  She agreed to do so.  *Id.*

### D.     Alleged Discriminatory Conduct and Stollings's Termination

Despite Hocutt's support, Stollings alleges that he devised a scheme to salvage his own job by terminating hers, thereby strategically drawing blame away from himself.  *Id.* ¶¶

4

28–30.  Stollings asserts that Texas Tech proceeded to terminate her at Hocutt's insistence in August 2020.  *Id.* ¶ 31.  Stollings alleges that her termination was a direct result of her actions in raising sexual-harassment concerns and participating in the Title IX investigation that brought negative publicity to Hocutt and the university.  *Id.* ¶ 198.

Stollings maintains that her termination was also based on Texas Tech's "discriminatory biases against female and gay and lesbian coaches."  *Id.* ¶ 34.  Stollings alleges that she and other female and gay and lesbian coaches were penalized for the same training methods that male and heterosexual coaches used without consequence.  *See id.* ¶ 35.  Stollings also claims that her efforts to obtain additional support and resources for women's sports were met with resistance and eventual retaliation in the form of her termination.  *Id.* ¶¶ 15, 200.  Stollings alleges that the defendants propagated an unwritten rule that female and gay and lesbian coaches were required to accept lesser treatment than male heterosexual coaches.  *Id.* ¶ 15.  Specifically, she alleges that Texas Tech administrators, including Hocutt, regularly made derogatory remarks about women to her or around her and made statements characterizing women as untrustworthy and overly emotional.  *Id.* ¶¶ 93–98.  Moreover, she alleges that she was reprimanded for instituting the same training procedures that had been regularly used by male coaches—namely the heart-rate monitoring system that she was instructed to cease using.  *See id.* ¶¶ 35, 179.

After her termination, Stollings alleges that Hocutt "made knowingly false and malicious defamatory public statements" about her at a press conference.  *Id.* ¶¶ 39, 206–07.  Specifically, his statements addressed her in both her personal and professional capacity as the women's basketball head coach and her relationship with the team.  *Id.*

## 2.    Procedural History

Stollings filed her original complaint in October 2020.  Dkt. No. 1.  Defendants filed a motion to dismiss.  Dkt. No. 12.  Prior to responding to the motion, Stollings filed her first amended complaint.  Dkt. No. 15.  Defendants then filed a partial motion to dismiss the first amended complaint.  Dkt. No. 17.  After extensive briefing—including a round of Rule 7(a) briefing on the qualified-immunity issue (Dkt. Nos. 26; 31; 33)—the Court granted defendants' motion to dismiss in part (Dkt. No. 38).  The Court found that Stollings had stated a claim against Texas Tech under Title VII for discrimination and Title IX for retaliation.  Dkt. No. 38 at 1.  The Court dismissed the other claims finding that the state-law claims are barred by sovereign immunity and that the defendants are not the proper parties to a Section 1983 claim for monetary damages.  *Id.* at 1–2.  Further, the Court dismissed the tort claims against Hocutt because they are precluded by the Texas Tort Claims Act.  *Id.* at 2.  The Court also granted Stollings's request for leave to amend.  *Id.* at 28.

Stollings duly filed a second amended complaint, which is the operative pleading at this stage.  Dkt. No. 42.  The second amended complaint is nearly identical to her first amended complaint except for the addition of a new Section 1983 claim (Count XIII) against Hocutt in his official capacity for violation of the Equal Protection Clause (Dkt. No. 42 at 48–50).  *Compare* Dkt. No. 42 *with* Dkt. No. 15.  The new complaint also adds two more prayers for relief (Sections vi and vii)—corresponding to Count XIII—asking the Court for an injunction, specific performance, and other equitable relief requiring Hocutt to "retract or otherwise to rescind the decision to terminate Coach Stollings' Employment Agreement for cause" and "to retract and otherwise correct [his] defamatory and

6

defamatory per se statements." Dkt. No. 42 at 51–52. Count XIII and the corresponding prayers for relief are clearly designed to exploit the *Ex parte Young* state-officer exception for equitable relief. Otherwise, no new factual allegations are made.

Stollings states that she repled her dismissed state claims as well as her claim under 42 U.S.C. § 1983 and the Equal Protection Clause (Dkt. No. 42 at 33–50) "***only*** to preserve possible arguments for appeal." Dkt. No. 44 at 19. Defendants then filed a partial motion to dismiss Stollings's second amended complaint based on both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 43. Defendants ask the Court to dismiss all claims except the claims under Title VII for discrimination and Title IX for retaliation—the two claims for which the Court previously held that Stollings had stated a claim for. *Id.* at 2. Defendants reassert that Hocutt is entitled to qualified immunity. *Id.* at 29–32. The motion is fully briefed (*See* Dkt. Nos. 44–45) and is thus ripe for review.

### 3.    Legal Standards

#### A.    Federal Rule of Civil Procedure 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the subject-matter jurisdiction of the district court to hear a case. "A case is properly dismissed for lack of subject matter jurisdiction when the Court lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (citation omitted). "[T]he plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Lack of subject-matter jurisdiction may only be found by considering: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of

disputed facts." *King v. U.S. Dep't of Veteran Affs.*, 728 F.3d 410, 413 (5th Cir. 2013). Therefore, "[i]n considering a challenge to subject matter jurisdiction, the district court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (internal quotations omitted).  Any action barred by the doctrine of sovereign immunity must be dismissed for lack of subject-matter jurisdiction.  *See Freeman v. United States*, 556 F.3d 326, 334–35 (5th Cir. 2009).

### B.   Federal Rule of Civil Procedure 12(b)(6) Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Therefore, a complaint must allege sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendants can challenge the sufficiency of a complaint through a motion to dismiss under Rule 12(b)(6).  In evaluating a 12(b)(6) motion, the court must accept all well-pleaded facts as true.  *Id.*  However, this tenet does not extend to legal conclusions.  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Moreover, a complaint may be dismissed under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense that will bar the award of any remedy.  *See EPCO Carbon Dioxide Prods. Inc. v. JP Morgan Chase Bank, N.A.*, 467 F.3d 466, 470 (5th Cir. 2006) ("Although dismissal under rule 12(b)(6) may be appropriate based on a

8

successful affirmative defense, that defense must appear on the face of the complaint."); *see also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Civil Procedure* § 1357 (3d ed. 2021).  But motions to dismiss under 12(b)(6) are viewed with disfavor and are rarely granted.  *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020).

### C.    The *Ex parte Young* Exception for Equitable Relief Against State Officers

"There are three basic elements of an *Ex parte Young* lawsuit. The suit must: (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *Williams on behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020) (citing *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015)).  "Merely requesting injunctive or declaratory relief is not enough."  *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471 (5th Cir. 2020).  The claim must seek "equitable relief—relief that is 'declaratory or injunctive in nature and prospective in effect.'"  *Williams*, 954 F.3d at 736 (quoting *Aguilar v. Tex. Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998)).

The *Ex parte Young* exception is "focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past."  *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986)).  This is because "[r]emedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law."  *Green v. Mansour*, 474 U.S. 64, 68 (1985).  Even where the relief sought would technically entail a future action by the state official sued, the Supreme Court has made clear that the "general criterion for determining when a suit is in fact against the sovereign is the *effect* of the relief sought" and not "empty formalism."  *Virginia Off. for Prot. & Advoc. v.*

9

*Stewart*, 563 U.S. 247, 256–57 (2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) & *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997)).

Admittedly, there are grey areas in the prospective/retrospective and equitable/monetary distinction. *See, e.g.*, *Milliken v. Bradley*, 433 U.S. 267, 289–90 (1977) (upholding an injunction against a state to pay the cost of complying with an order to implement future school programs to remedy a past denial of education benefits); *Edelman v. Jordan*, 415 U.S. 651, 668, 678 (1974) (holding that a claim for retroactive payment of benefits wrongfully withheld was barred by sovereign immunity, but not reaching the claim for timely future-benefit payments); *Couer d'Alene*, 521 U.S. at 276, 278–88 (suggesting a balancing test between state sovereignty and the obligation of state officials to obey federal law on a claim of title over submerged lands).

And courts have upheld equitable relief where there is but an "ancillary effect" on the state treasury that is "incidental to the declaratory or injunctive relief that is permitted under *Ex parte Young*." *See Fontenot v. McCraw*, 777 F.3d 741, 753 (5th Cir. 2015) (citing *Edelman*, 415 U.S. at 651, 668). "Ancillary relief, however, cannot stand alone. It must accompany and further some other—and otherwise appropriate—[equitable] relief." *Id.* To qualify as ancillary relief, the payment of state funds must be "a necessary consequence of compliance in the future with a substantive federal-question determination." *See id.* (citing *Edelman*, 415 U.S. at 669).

### i.   A request for reinstatement is actionable under the exception, but a suit for payment of funds or specific performance is not.

The Fifth Circuit has held that a state employee's "request for reinstatement is sufficient to bring a case within the *Ex parte Young* exception to Eleventh-Amendment immunity, as it is a claim for prospective relief designed to end a continuing violation of

federal law." *Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 324 (5th Cir. 2008) (FMLA case); *see also Jones v. Tex. Juv. Just. Dep't*, 646 F. App'x 374, 376 (5th Cir. 2016) (1983 and Title VII case). But "*Ex parte Young* cannot be used to obtain an injunction requiring the payment of funds from the State's treasury . . . or an order for specific performance of a State's contract." *Stewart*, 563 U.S. at 256–57 (citations omitted); *see also In re Ayers*, 123 U.S. 443 (1887).

### ii.   A request for declaratory relief is actionable as long as there is a well-pleaded, ongoing violation of federal law.

"[A] declaratory judgment action is inherently anticipatory." *NiGen*, 804 F.3d at 395. But to clear the sovereign-immunity hurdle, the claims requesting declaratory relief must "demonstrate the ongoing nature of the alleged unconstitutional conduct." *Id.* "While it is true that [a] declaratory judgment could have some future effect by clarifying the contours of [a constitutional right] and deterring similar actions by the state, 'compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.'" *Freedom from Religion Found. v. Abbott*, 955 F.3d 417, 426 (5th Cir. 2020) (quoting *Green*, 474 U.S. at 68). An ongoing violation of federal law must be alleged. *NiGen* 804 F.3d at 394–95; *see also Verizon Md., Inc. v. Pub. Serv. Comm'n.*, 535 U.S. 635, 645 (2002) ("In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.") (quoting and citing *Couer d'Alene*, 521 U.S. at 261, 296, 298–299).

**4.    Analysis**

    **A.    The Court dismisses Stollings's state-law claims and monetary-damages claim under Section 1983 for reasons stated in its prior opinion and order.**

The Court previously found that Stollings's state-law claims are barred by sovereign immunity and, further, that the tort claims against Hocutt in his individual capacity are barred by the Texas Tort Claims Act.  Dkt. No. 38 at 1–2, 12–14, 25–27.  In addition, the Court also found that Texas Tech and Hocutt in his official capacity were not the proper parties for Stollings's Section 1983 claim because it was for monetary relief alone.  *Id.* at 15–16.  And Stollings still only requests money damages for this claim.  *See* Dkt. No. 42 at 50–51.  The factual landscape before the Court is identical to that previously pled.  The law has not changed.  And Stollings admits that she repled her dismissed claims "only to preserve possible arguments for appeal."  Dkt. No. 44 at 19.  Therefore, the Court dismisses Stollings's state-law claims (Counts I-VI, XI) and her Section 1983 claim (Count IX) for reasons stated in its former opinion and order (Dkt. No. 38).

    **B.    Counts X and XII—requesting specific performance and declaratory relief with respect to Stollings's breach-of-contract and defamation claims—are also dismissed.**

Because Counts X (specific performance) and XII (declaratory judgment) are requests for a specified relief with respect to the dismissed state-law claims, the Court likewise dismisses them.  Count X is geared towards her breach-of-contract claim (Count I).  *See* Dkt. No. 42 at 45 (alleging that Stollings fully performed under the employment contract and that defendants materially breached).  Count XII asks the court to issue a declaratory judgment: (1) that she did not breach her employment contract, (2) that Hocutt's post-termination statements were malicious and made in reckless disregard of their truth, and (3) that these statements caused Stollings harm.  *Id.* at 47.  Similar to Count X, Count XII is

aimed at Stollings's breach-of-contract and defamation claims.  Both Counts X and XII request relief for already dismissed state-law claims, and, therefore, the Court also dismisses them.

### C.    The Court dismisses all equitable relief sought in Count XIII except the request for reinstatement.

The only surviving claim—other than the unchallenged claims under Title VII (Count VII) and Title IX (Count VIII)—is Count XIII, the new Section 1983 claim against Hocutt in his official capacity alleging a violation of the Equal Protection Clause (Dkt. No. 42 at 48–50).  With respect to Count XIII, Stollings requests the following relief:

> (vi) As against Defendant Hocutt in his official capacity as a result of his violation of Coach Stollings' rights pursuant to 42 U.S.C. § 1983, and the Equal Protection Clause of the United States Constitution, as alleged above, specific performance and other equitable relief, including injunctive relief, directing and requiring Defendant Hocutt, who is delegated with authority to make hiring and firing decisions in the Athletics Department, to act to the full extent of his authority and duty to retract or otherwise to rescind the decision to terminate Coach Stollings' Employment Agreement for cause;

> (vii) As against Defendant Hocutt in his official capacity as a result of his violation of Coach Stollings' rights pursuant to 42 U.S.C. § 1983, and the Equal Protection Clause of the United States Constitution, as alleged above, specific performance and other equitable relief, including injunctive relief, directing and requiring Defendant Hocutt to retract and otherwise correct the defamatory and defamatory per se statements alleged above impeaching or attempting to impeach Coach Stollings' honesty, integrity, virtue and reputation.

Dkt. No. 42 at 51–52.  Although not entirely clear, Stollings requests, at minimum: specific performance—presumably of her employment contract; an injunction—possibly for reinstatement, among other things; and other equitable relief—which likely subsumes declaratory relief.  Each are addressed in turn.

### i.     Count XIII's request for specific performance is barred by sovereign immunity.

Count XIII seeks specific performance of Stollings's employment agreement.  *Id.*  But the Supreme Court has clearly stated that "*Ex parte Young* cannot be used to obtain an injunction requiring the payment of funds from the State's treasury or an order for specific performance of a State's contract."  *Stewart*, 563 U.S. at 256–57 (citations omitted); *see also Ayers*, 123 U.S. 443.  It is unclear at this juncture of litigation whether the alleged violation of the Equal Protection Clause would also be a violation of the employment contract.  Assuming for the sake of argument that it is, specific performance would entail a liquidated-damages payment if Stollings were terminated without cause.  Dkt. Nos. 42 ¶ 89 ("Under Section V(C) of the Agreement, in the event Texas Tech terminated Coach Stollings without cause, Texas Tech would be required to 'pay liquidated damages to Coach [Stollings] in an amount equal to Seventy-Five Percent (75%) of the remaining Base Salary and Rights Fees.'").

In any case, the law is clear: no suits for specific performance of a contract with the state.  *Stewart*, 563 U.S. at 256–57.  Therefore, the Court dismisses Count XIII insofar as it requests specific performance of Stollings's employment contract.

### ii.    Count XIII's apparent request for declaratory relief is barred by sovereign immunity because Stollings fails to allege an ongoing and personal constitutional harm.

Count XIII does not request declaratory relief explicitly.  *See* Dkt. No. 42 at 51–52.  But given that Count XII explicitly requests declaratory relief—albeit for state claims—and that "other equitable relief" subsumes declaratory relief, the Court addresses Count XIII vis-à-vis declaratory judgment.  Under *NiGen*, a claim requesting declaratory relief must "demonstrate the ongoing nature of the alleged unconstitutional conduct."  804 F.3d at 395.

14

But *NiGen* makes clear that the ongoing constitutional violation must be alleged *as to the claimant* and not generally or with respect to some other individual.  *See id.* (finding allegations of the Attorney General's continued refusal to justify his threatening letters *to the plaintiff* constituted an ongoing constitutional violation).  And current standing jurisprudence confirms this premise.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'") (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992)); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

Here—although somewhat opaque—Stollings appears to have alleged at least some continuing violations of the Equal Protection Clause.  She alleges that "Hocutt regularly, and in this instance in particular, penalized female and gay and lesbian coaches for employing the same demanding and effective coaching techniques that male and heterosexual coaches utilized and continue to utilize without consequence."  Dkt. No. 42 ¶ 35.  Later, she alleges "Texas Tech"—and presumably Hocutt also—"continues to hire and retain male coaches and, specifically, coaches of men's sports teams who engage in far more aggressive behavior towards student-athletes, including abuse."  *Id.* ¶ 312.  She states that "Hocutt, acting in his official capacity, violated [her] constitutional right to be free from sex discrimination in employment by subjecting her to disparate treatment and disparate discipline."  *Id.* ¶ 322.  Finally, Stollings alleges that Hocutt's actions "have directly and proximately caused, and *continue to cause*, [her] to suffer a loss of future professional opportunities, pain and suffering, humiliation, personal embarrassment and damage to her professional reputation."  *Id.* ¶ 328 (emphasis added).

**a.  Stollings lacks standing to complaint about the alleged violation of others' rights.**

Stollings has not alleged the requisite elements to seek to vindicate the third-party rights of current female, gay, or lesbian coaches, staff, and others of Texas Tech.  *See generally Kowalski v. Tesmer*, 543 U.S. 125, 125 (2004) (holding that third-party standing requires (1) a close relationship to the right-holders, and (2) the right-holders must face hindrances to asserting their rights); *Singleton v. Wulff*, 428 U.S. 106, 114–16 (1976).  And so, to the extent she alleges a continuing constitutional violation based on Hocutt's alleged continuing discriminatory practices with respect to of current female, gay, or lesbian coaches, staff, and others of Texas Tech, she fails to demonstrate standing to raise an equal-protection claim for declaratory relief.

**b.  The alleged continuing *effect* of Hocutt's alleged discriminatory actions in the past is not enough to demonstrate an ongoing constitutional harm.**

To the extent that Stollings alleges that Hocutt's alleged discriminatory actions are continuing to cause her harm, she is alleging a continuing *effect* of a past alleged constitutional violation and not a continuing constitutional *violation* by an ongoing action by a state official.  *NiGen* noted the Attorney General's continued refusal to justify his threatening letters to the plaintiff was an ongoing constitutional violation.  804 F.3d at 395. In other words, *NiGen* indicates that a state official's continuing, constitutionally violative *act or omission*—as opposed to merely an ongoing *effect* of a past violation—is required to overcome sovereign immunity in a claim for declaratory relief.

And this principle is consistent with the Supreme Court's finding in *Hutto* that the state prisoners' action against state prison officials—alleging conditions-of-confinement violations—survived Eleventh-Amendment immunity.  *Hutto v. Finney*, 437 U.S. 678, 700

(1978).  The Supreme Court specifically contrasted its decision with *Milliken II* in which the court found that "the scope of a district court's equitable powers to remedy past wrongs is broad."  *Id.* at 687 n.9 (quoting *Milliken II*, 433 U.S. at 281).  It noted that, unlike *Milliken II*, the sovereign-immunity issue was much less difficult because the district court "was not remedying the present effects of a violation in the past" but "seeking to bring an ongoing violation to an immediate halt."  *Id.* at 687 n.9.

Even in *Milliken II*, the Supreme Court was satisfied that the injunction issued by the district court "looks to the future, [and] not simply to presently compensating victims for conduct and consequences completed in the past."  433 U.S. at 290 n.21.  Though the injunction did formally address the past effects of segregationist education policies, the "decree to share the *future* costs" of integrationist education policies "as a *necessary consequence of compliance* in the future with a substantive federal-question determination" was enough for the court to uphold the suit and the relief issued against the sovereign-immunity bar.  *Id.* at 289 (quoting *Edelman*, 415 U.S. at 668) (emphasis added).  Hence, *Milliken II* was an ancillary-effect case.

Stollings seems to imply—in Sections vi and vii of her Prayer for Relief—that Hocutt's failure to retract or rescind (1) his decision to terminate her employment agreement for cause and (2) his statements allegedly impeaching Stollings's reputation constitutes an ongoing violation of her equal-protection rights.  *See* Dkt. No. 42 at 51–52.  But these requests to cure omissions by Hocutt appear to be remedies for state claims—breach of contract and defamation—re-wrapped as an equal-protection remedy.  Moreover, the request to retract or rescind the decision to terminate the employment agreement (Section vi)—to the extent that it is not a request for reinstatement—is essentially a request for

17

specific performance of a state contract, which is barred by sovereign immunity.  *See supra* Section 4.c.i.  And Stollings fails to demonstrate that any requested monetary damages that may result from her requested relief are a necessary consequence of future compliance with a determination as to her rights under the Equal Protection Clause.  *See Fontenot*, 777 F.3d at 753.  Finally, Stollings provides no legal authority—because there is none—that a refusal to retract or correct allegedly defamatory statements constitutes an ongoing violation of federal law.

In sum, Stollings fails to allege an ongoing action or omission by Hocutt, in his official capacity, that is continuing to violate her personal rights under the Equal Protection Clause.  Therefore, Count XIII, to the extent it asks for declaratory relief, runs afoul of the sovereign-immunity bar.

### iii.   Stollings fails to provide legal authority indicating that an injunction directing Hocutt to retract allegedly defamatory statements is a type of relief permitted under *Ex parte Young*.

Next, Stollings fails to specifically demonstrate that she is legally entitled to an injunction for Hocutt's refusal to retract allegedly defamatory statements based on the Equal Protection Clause—independent of her defamation claims.  And even assuming for the sake of argument that she is entitled, there is a paucity of federal legal authority and no binding authority dealing with retraction or correction of defamatory statements in the *Ex Parte Young* context.  The one case that squarely addresses the issue of whether "retraction of defamatory allegations" is valid "prospective relief" found that the "proposed injunctive relief is entirely remedial, an attempt to 'unring the bell,'" and "fail[ed] to meet the *Ex Parte Young* standard for prospective injunctive relief against a state official."  *Hickson v. Bowler*, No. CIV 08-255-B-W, 2009 WL 742737, at *2 (D. Me. Mar. 17, 2009), *report and*

*recommendation adopted*, No. CV-08-255-B-W, 2009 WL 1975417 (D. Me. July 7, 2009).

And indeed, this case is just that: an attempt to unring the bell.  The failure to retract Hocutt's allegedly defamatory post-termination statements may be technically ongoing, but in reality—absent some allegation of *continuing* defamatory and constitutionally violative statements by Hocutt—Stollings merely seeks to remedy past wrongs and their continuing *effects*.  And as mentioned previously, alleging ongoing effects by past equal-protection violations is not enough to constitute a continuing constitutional harm.  *See supra* Section 4.C.ii.

Moreover, Stollings fails to specifically allege how these defamatory statements violated her equal-protection rights.  Stollings's pleadings regarding Hocutt's defamatory statements are all related to her character as a person and her professional standing as a coach.  *See* Dkt. No. 42 ¶¶ 39, 205, 207, 241, 244, 249–52.  Nowhere does she explain how these statements violated her equal-protection rights.  Therefore, Stollings has failed to show that an injunction directing Hocutt to retract his allegedly defamatory statements is permissible relief under *Ex Parte Young*.

### iv.    Liberally construing Stollings's pleadings as a request for reinstatement, the Court finds that Stollings has stated a claim.

The Fifth Circuit has carved out an exception to overcome the sovereign-immunity bar that allows a state employee to request reinstatement in a suit against a state official.  *See Nelson*, 535 F.3d at 324.  And the Fifth Circuit has specifically made the exception available in the context of Section 1983 claims.  *Jones*, 646 F. App'x at 376.  But Stollings never explicitly asks for reinstatement in her complaint.  *See* Dkt. No. 42.  Her somewhat cryptically worded Prayer for Relief asks—with respect to Count XIII—that the Court order Hocutt to "retract or rescind the decision to terminate [her] Employment Agreement for

19

cause." *Id.* at 51.  A court must construe pleadings liberally in resolving a 12(b)(6) motion. *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).  And applying this liberal lens, the Court construes Stollings's Prayer for Relief as to Count XIII to include a request for reinstatement.  *See* Dkt. No. 42 at 51.

However, to be clear, reinstatement is not a viable option in the menu of potential remedies in this case.  "Courts have found reinstatement inappropriate in cases where a terminated employee has found other employment, has been replaced and reinstatement would have an unacceptable adverse effect on the replacement, where the parties have stipulated that reinstatement is not feasible or appropriate, and where there is antagonism between the terminated employee and the former employer."  *Overman v. City of E. Baton Rouge*, 132 F. Supp. 3d 753, 761 (M.D. La. 2015) (citing *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 127 (5th Cir. 1992); *Hadley v. VAM P T S*, 44 F.3d 372, 376 (5th Cir. 1995); *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 526 (5th Cir. 2001); *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001)).  Coach Stollings's former position is currently occupied.  And the present suit and accompanying allegations provide ample proof that there is acrimony between Stollings and her former employer.  Thus, reinstatement is not feasible and will not be awarded in this case.  And where reinstatement is not a feasible, the Fifth Circuit has suggested alternative remedies, including front pay.  *See Deloach v. Delchamps, Inc.*, 897 F.2d 815, 822 (5th Cir. 1990); *Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 382 (5th Cir. 1988); *see also Fournerat v. Beaumont Indep. Sch. Dist.*, 6 F. Supp. 2d 612, 613 (E.D. Tex. 1998).  Should Stollings prevail on her surviving claims under Title VII

and Section 1983, the Court suspects that any remedy awarded would be redundant.[1]  But, at this stage, it is not necessary to resolve the issue of permissible remedies.

For avoidance of doubt, however, the Court feels obliged to remind the parties that an injunction to pay liquidated damages pursuant to the employment contract based on a finding of termination without cause would violate the sovereign-immunity bar on suits for specific performance of a contract with the state.  *See supra* Section 4.C.i.  So, to the extent that Stollings does request reinstatement, any remedy for such claim must be equitable *and* extra-contractual—that is, no liquidated damages.  *See generally Deloach*, 897 F.2d at 824 ("'Although front pay is an award of monetary relief, it is still an equitable remedy' in section 1983 cases.") (quoting *Haskins v. City of Boaz*, 822 F.2d 1014, 1015 (11th Cir. 1987)). Having construed Count XIII liberally as requesting an injunction for reinstatement, the Court finds that the request for reinstatement under Count XIII clears the sovereign-immunity hurdle.

Next, the Court analyzes whether Stollings has alleged sufficient facts to state a claim upon which relief may be granted.  "When a § 1983 [equal-protection] claim is used as a parallel to a Title VII claim under a given set of facts, the elements required to be established

---

[1] "[T]he Supreme Court has emphasized the independence of Title VII and other remedies" available in contract and 1983 claims.  *Nilsen v. City of Moss Point*, 674 F.2d 379, 384 n.6 (5th Cir. 1982) (citing *Johnson v. Ry. Express Agency*, 421 U.S. 454, 459, 466 (1975); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48–49 (1974)), *rev'd on reh'g on different grounds*, 701 F.2d 556, 560 (5th Cir. 1983) (confirming that the plaintiff, who asserted both Title VII and 1983 claim, had more than one choice of remedy)).  Yet, in practice, actions including Title VII and 1983 claims often have similar remedies.  *See, e.g.*, *Johnson*, 853 F.2d at 383 ("A back pay award under Title VII is considered equitable rather than legal in nature, and its character does not change simply because the award is made pursuant to § 1981 or § 1983.") (citing *Whiting v. Jackson State Univ.*, 616 F.2d 116, 122 n.3 (5th Cir. 1980)); *Walsdorf v. Bd. of Comm'rs for the E. Jefferson Levee Dist.*, 857 F.2d 1047, 1054 (5th Cir. 1988) (finding an award of back pay on the basis of Title VII rendered it unnecessary to consider plaintiff's Section 1983 and 1981 claims because "the remedies afforded her under Title VII are sufficient to make her whole for the damage she has suffered.").

for each claim are deemed the same under both statutes." *Merwine v. Bd. of Tr. For State Insts. of Higher Learning*, 754 F.2d 631, 635 n.3 (5th Cir. 1985). But "[u]nlike Title VII, § 1983 applies to individuals" and, thus, requires "individual causation." *Jones v. Hosemann*, 812 F. App'x 235, 238 (5th Cir. 2020) (quoting *Sims v. City of Madisonville*, 894 F.3d 632, 640 (5th Cir. 2018)). "Thus, while the prima facie elements of a Title VII claim may establish an employer's liability for intentional discrimination, a § 1983 plaintiff must additionally plead and prove which actions of the individual defendant caused the harm." *Jones*, 812 F. App'x at 238 (citing *Sims*, 894 F.3d at 641).

The Court previously found that Stollings had stated a claim for Title VII discrimination against Texas Tech and Hocutt. Dkt. No. 38 at 17–22. Among other things, the Court found that the parties had stipulated that the first three elements of the *McDonnell Douglas* framework were present and also concluded that Stollings had sufficiently alleged the fourth element to survive dismissal: that she was treated less favorably than other similarly situated employees outside of her protected group. *Id.* at 19–21. Moreover, the Court found that Stollings had sufficiently alleged a claim for disparate treatment under Title VII. *Id.* at 21–22. Therefore, for avoidance of redundancy, the Court does not reexamine these factors for Count XIII and finds that such elements are sufficiently alleged for Stollings's Section 1983 claim for violation of the Equal Protection Clause against Hocutt in his official capacity.

The only remaining puzzle piece is individual causation as to Hocutt. Stollings alleges Hocutt ignored her requests for adequate resources for women's athletics and "began retaliating against Coach Stollings for violating the unwritten rule that female and gay and lesbian coaches were required to accept lesser treatment than male and heterosexual

coaches."  Dkt. No. 42 ¶ 15.  She further alleges Hocutt "regularly, and in this instance in particular, penalized female and gay and lesbian coaches for employing the same demanding and effective coaching techniques that male and heterosexual coaches utilized and continue to utilize without consequence."  *Id.* ¶ 35.  She also states " Hocutt created an environment in which male and heterosexual coaches were treated better than female and gay and lesbian coaches, and men's athletic programs were treated better than female athletic programs."  *Id.* ¶ 91.  And finally, she alleges "Hocutt in particular, regularly made derogatory remarks about women and women's sports directly to and around [her]." *Id.* ¶ 93.  While there are many more allegations, Stollings has sufficiently pled that Hocutt's actions have caused her constitutional harm.

Defendants object that Stollings "has not alleged that Hocutt has the power to reinstate her employment with Texas Tech."  Dkt. No. 43-1 at 14.  While true, the Court does not find this fatal to her reinstatement claim given that Stollings has alleged that "Hocutt is responsible for supervising all collegiate sports at Texas Tech . . . and for recruiting, vetting and hiring head coaches and staff for Texas Tech's athletic program." Dkt. No. 42 ¶¶ 58–59.  Admittedly, hiring/recruiting and reinstating are different things. But, once again, the Court construes the pleadings liberally to find that Stollings has alleged that Hocutt has the power to reinstate her.  *See Kane*, 322 F.3d at 374.  After all, as just mentioned, though the claim is for reinstatement, the remedy in this case, if any, will not be reinstatement.  The Court finds that Stollings has sufficiently alleged, under Count XIII, a claim for reinstatement.

**D.    The Court need not address qualified immunity as to Hocutt because no claims against him in his individual capacity have survived.**

No claims against Hocutt in his individual capacity survive dismissal. Qualified immunity, of course, only applies to claims against government officials in their individual capacities and not their official capacities. *Porter v. Valdez*, 424 F. App'x 382, 386 (5th Cir. 2011); *see also Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000). Therefore, the Court, again, need not address the qualified-immunity issue that it formerly sidestepped (*see* Dkt. No. 38 at 27).

**5.    Conclusion**

For the reasons stated above, the Court grants defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. No. 43), except as to a claim for reinstatement under Count XIII. Therefore, Counts I–VI and IX–XII are dismissed. Count XIII, insofar as it requests equitable relief other than reinstatement, is also dismissed.

So ordered March 18, 2022.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE